UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

WARM WINDS dba
ALTERNATIVES TO VIOLENCE,
a California Non-Profit
Corporation,

       Plaintiff,

  v.

THE PROBATION DEPARTMENT
OF THE COUNTY OF SACRAMENTO,
VERNE L. SPEIRS, CHIEF;
SHAWN AYALA, ASSISTANT
PROBATION CHIEF; SUSAN
VANQUILL, RETIRED
ANNUITANT/PROBATION OFFICER;
SHELLY FISHER, PROBATION
OFFICER; MORGAN WARD,
SUPERVISOR, DOMESTIC
VIOLENCE UNIT, DOES 1
THROUGH 10, INCLUSIVE,

       Defendants.

No. 2:08-cv-01398-MCE-GGH

**MEMORANDUM AND ORDER**

----oo0oo----

Through the present action, Plaintiff Warm Winds dba Alternatives To Violence, a California Non-Profit Corporation ("Warm Winds" or "Plaintiff") seeks redress for the revocation of approval for a program it operated to treat certain criminal probationers. Defendants include the Probation Department of the County of Sacramento, the entity responsible for authorizing the program in question, along with various individuals employed by the Probation Department.[1] Plaintiffs allege that Defendants' revocation of its treatment program violated applicable due process rights, and assert four claims for violation of 42 U.S.C. § 1983, all predicated on that purported denial.

Defendants now move for summary judgment, or alternatively for summary adjudication of issues, arguing as a fundamental matter that Plaintiff had no protected property interest in operation of its program to which due process rights can attach. Defendants further contend that even if some property interest did exist, the due process afforded Plaintiff was constitutionally adequate in any event. Defendants go on to alternatively assert their entitlement to either absolute or qualified immunity in the event some violation did occur.

As set forth below, because the Court finds no protected property interest in this case upon which due process rights can attach, summary judgment is appropriate on that ground alone.

///
///

---

[1] Both the Probation Department and the Individual Defendants will be referred to collectively as "Defendants" in this Memorandum and Order unless otherwise indicated.

2

## BACKGROUND[2]

California Penal Code § 1203.097 allows state courts to order, as a condition of probation to criminal defendants convicted of certain domestic violence crimes, that such defendants attend a Batterer's Treatment Program ("BPT"). Section 1203.097 gives county probation departments the "sole authority" to issue, approve, deny, suspend, or revoke the approval of BPT programs. Cal. Penal Code § 1203.097(c)(5).

Warm Winds operated a BPT in Sacramento County between February of 2002 and June 21, 2006, with the approval of the Sacramento County Probation Department. (Defs.' Undisputed Fact ("UF" No. 2). On or about July 1, 2005, following site visits by Defendants during which Defendants observed Plaintiff's BTP sessions with parolees, the Probation Department issued a Notice of Corrective Plan ("NCAP") to Plaintiff on grounds that Plaintiff's BTP programs did not meet the Department's minimum standards. Decl. of Jim Sanders, ¶ 4. That Notice was issued in accordance with § 1203.097(c)(2)(B), which provides in pertinent part as follows:

---

[2] To the extent the parties has filed evidentiary objections and evidence to which objections have been lodged appear in this section, those objections are overruled. Otherwise, the objected matters were not pertinent to the Court's decision and need not be specifically addressed herein. Moreover, the Court notes that both sides have requested that judicial notice be taken, either of California statutory authority of materials already filed in this case. Those requests were unopposed and are hereby granted.

> "(B) If the probation department determines that a program is not in compliance with standards set by the department, the department shall provide written notice of the noncompliant areas to the program. The program shall submit a written plan of corrections within 14 days from the date of the written notice of noncompliance. A plan of correction shall include, but not be limited to, a description of each corrective action and timeframe for implementation. The department shall review and approve all or any part of the correction and notify the program of approval or disapproval in writing. If the program fails to submit a plan of correction or fails to implement the approved plan of correction, the department shall consider whether to revoke or suspend approval and, upon revoking or suspending approval, shall have the option to cease referrals of defendants under this section."

At some point prior to October 24, 2005, Warm Winds submitted the response to Defendants' NCAP required by the statute as enumerated above. Then, on February 9, 2006, Defendants issued a second NCAP, indicating that Plaintiff's response to the July 1, 2005 NCAP still failed to adequately address the Department's concerns. Sanders Decl., ¶ 7. The February 9, 2006 NCAP also indicated that additional site visits, observations and investigations since the original July 1, 2005 NCAP had revealed additional deficiencies in Warm Winds' BTP program, including failure to meet minimum standards in the areas of facility communication, ethics and consistency. Id.

Plaintiff's response to the February 9, 2006 NCAP was received on February 2, 2006. UF No. 31. Thereafter, on June 21, 2006, the Probation Department notified Plaintiff, in a document entitled "Revocation of Program", that because a revisit revealed continuing deficiencies, the Department was revoking its authorization for Plaintiff's BPT program. UF No. 36; see also Decl. of Morgan Ward, ¶ 4 and Defs.' Ex. "I" to Mot. for Summ. J.

4

1  Defendants' revocation caused Plaintiff to file the instant
2  lawsuit on June 19, 2008.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. See Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all or any part thereof."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).
///

1 2 3 4 5
>Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

6 Celotex Corp. v. Catrett, 477 U.S. at 323(quoting Rule 56(c)).

7 If the moving party meets its initial responsibility, the
8 burden then shifts to the opposing party to establish that a
9 genuine issue as to any material fact actually does exist.
10 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
11 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.
12 253, 288-89 (1968).

13 In attempting to establish the existence of this factual
14 dispute, the opposing party must tender evidence of specific
15 facts in the form of affidavits, and/or admissible discovery
16 material, in support of its contention that the dispute exists.
17 Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that
18 the fact in contention is material, i.e., a fact that might
19 affect the outcome of the suit under the governing law, and that
20 the dispute is genuine, i.e., the evidence is such that a
21 reasonable jury could return a verdict for the nonmoving party.
22 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52
23 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper
24 Workers, 971 F.2d 347, 355 (9th Cir. 1987).
25 ///
26 ///
27 ///
28 ///

6

Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)).  As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

///
///
///
///
///
///

7

**ANALYSIS**

Plaintiff's First and Second Claims for Relief, which allege denials of both procedural and substantive due process in violation of 42 U.S.C. § 1983, depend on their face upon a viable right to due process. Moreover, while the Third Claim for Relief alleges a failure to train or supervise also in violation of § 1983, it too is premised on due process given Plaintiff's allegation that "the failure of Defendant Probation Department to train its officers and employees" caused a "deprivation of Plaintiff Warm Winds property interest, without due process of law..." Compl., ¶ 63. Finally, Plaintiff's Fourth and final Claim for Relief is equally grounded on due process since it alleges a government taking of a "property right" without "due process of law." Id. at ¶ 75.

Given the fundamental thread of due process that pervades Plaintiff's Complaint, it follows that unless Plaintiff can identify a cognizable property interest which, in turn, invokes due process, it cannot state any viable claim and summary judgment in Defendant's favor is proper. See Curtis v. Oklahoma City Public Schools, 147 F.3d 1200, 1215 (10th Cir. 1998) (substantive due process depends on a property interest "to which the protection of due process can attach"); Thornton v. City of St. Helens, 425 F.3d 1158, 1164 (9th Cir. 2005) (procedural due process hinges on a protectible property interest combined with the denial of adequate procedural protection).

///

    Here, aside from requiring that a probation department provide notice of non-compliance to an authorized BTP provider, and requiring the department in turn, to notify the provider if it approves or rejects any corrective action proposed by the provider, Section 1203.097 makes it clear that all decisions pertaining to the approval or revocation of approval of a BPT provider are at the complete discretion of the department. See Cal. Penal Code § 1203.097(c)(5)(C) ("The probation department has the sole authority to approve the issuance, denial, suspension, or revocation of approval and to cease new enrollments or referrals to a batterer's program....").

    To assert a valid property interest, the claiming party must have more than either a "unilateral expectation" or an "abstract need or desire" for the claimed interest; rather, the party must legitimately claim entitlement to the benefit conferred. Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). A legitimate claim of entitlement, which does qualify as a protected property interest, must be distinguished from such a unilateral expectation that does not merit protection. Id. The mere fact that a person or entity has received a benefit in the past, even for a considerable length of time, does not, without more, rise to the level of a legitimate claim of entitlement. Doran v. Houle, 721 F.2d 1182, 1186 (9th Cir. 1983).

    Significantly for purposes of this case, a benefit is not a protected property interest if government officials can grant or deny the benefit at their discretion. Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005).

///

While an operating license that can be revoked only "for cause" does create a property interest, on the other end of the spectrum a statute that gives the responsible entity unfettered discretion to approve, deny, or revoke an application does not create a property right. Thornton v. City of St. Helens, 425 F.3d at 1164, citing Jacobson v. Hannifin, 627 F.2d 177, 180 (9th Cir. 1980). This case far more closely resembles the latter scenario.

Section 1203.097 does require that the Department notify a BTP provider like Plaintiff of any programmatic deficiencies, and give it a chance to remedy such shortcomings, before terminating the program's authorization. That is still not enough to confer a property interest, however, since the statute does not mandate that a BTP license be renewed upon compliance with certain criteria not within the discretion of the Department. Instead, because the Department still has discretion to take whatever action it deems appropriate, there is no cognizable property interest. Thornton v. City of St. Helens, 425 F.3d at 1164-65. Consequently Plaintiff cannot assert any legitimate entitlement to constitutional due process.

All Plaintiff can expect under the statute is authorization to conduct BTPs on a year-to-year basis, subject to annual renewal,[3] unless the Department exercises its discretion to revoke or suspend its authorization after the prescribed notice.

///
///

---

[3] Under § 1203.097(c)(5)(B), the Sacramento County Probation Department is authorized to charge an annual fee for renewal not to exceed $250.00. It is undisputed that BPT approvals by the Department must be renewed annually. UF No. 7.

10

In an attempt to argue that a property interest is still created, however, Plaintiff points to language in § 1203.097 indicating that a provisional approval, prior to a probation department's final authorization for operation of a BTP, "shall not be considered a vested right." Cal. Penal Code § 1203.097(c)(2)(A). Because the statute unequivocally goes on to give the department complete discretion in whether to approve, deny or revoke a BPT permit, however, that provisional language cannot by implication mean that final authorization <u>does</u> give a property interest subject to due process protection. To the contrary, the only "vested right" that the statute confers upon final, as opposed to provisional approval, is the right to operate within the coming year unless the department determines that revocation is necessary following the required notice. That construction harmonizes the whole of the statute, which cloaks the department with the sole authority to effectuate either revocation or renewal-- a discretion that cannot be reconciled with any entrenched property right necessitating full due process. Significantly, too, the fact that the statute nowhere affords any hearing right for an aggrieved provider also cuts against any notion that full due process is required.

    The notice that § 1203.097 does mandate has been satisfied by the Sacramento County Probation Department in this case. Defendants submitted their First NCAP to Plaintiff on July 1, 2005. After Plaintiff belatedly submitted its response in October of 2005, Defendants sent a second NCAP on February 9, 2006, again informing Plaintiff of deficiencies in its program.
///

11

After Plaintiff submitted an additional corrective action plan to Defendants on February 22, 2006, and after further investigation revealed continuing programs, the Department exercised its discretion and notified Plaintiff that its authorization to operate a BTP was being terminated.  If anything, the Department went beyond the minimum notice required by the statute in giving Plaintiff two opportunities to provide the required correction before finally deciding to terminate the program.

Although Plaintiff claims that the final June 21, 2006 revocation brings up new issues that had not been previously voiced in Defendants' NCAPs, the Notice of Revocation clearly cites facilities issues that unquestionably had been earlier addressed.  There is no requirement in the statute that Defendants provide multiple notices of deficiency, and notices every time a new problem is identified.  Instead, all the statute requires is that a deficiency notice be sent, and that the provider be permitted to respond to that notice.  Thereafter, the Department had complete authority, in its sole discretion, to make the final decision with respect to whether Plaintiff's BPT could continue.  Defendants here complied with that process, and the procedure outlined by the statute was followed.

From a policy perspective, a probation department must have the ability to respond quickly, and decisively, once it determines, as Defendants did here, that Plaintiff's BTP no longer satisfied its expectations or standards.  BTP services must ensure that criminals with domestic violence offenses properly satisfy the conditions of their probation or parole, and be geared towards stopping any further such violence.

12

The effectiveness and quality of BTP services impacts both the rehabilitation of the criminal and the safety of victims from any additional offenses. As § 1203.097 recognizes, a probation department must not be constrained in acting to effectuate these strong public interests. Any additional procedural rights beyond those already afforded to Plaintiff would be inimical to that all-important discretion.

**CONCLUSION**

The Court concludes that a BTP provider like Plaintiff herein is entitled to no further procedural or substantive safeguards under the terms of the applicable statute, California Penal Code § 1203.097, once the notice requirements outlined by the statute have been satisfied. Because those requirements were met in the instant case, and because all of Plaintiff's claims asserted herein depend upon a property interest sounding in due process that is not present, summary judgment in favor of Defendants is proper. Defendants' Motion for Summary Judgment (Docket No. 25) is accordingly GRANTED.[4]

///
///
///

---

[4] Because oral argument was not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

13

The Court need not address the remaining grounds for summary judgment and/or summary adjudication advanced by Defendants, and declines to do so. Furthermore, in light of the Court's ruling which granted the Defendants' Motion for Summary Judgment (Docket No. 25), Plaintiff's Motion for Summary Judgment (Docket No. 26) is now moot. The Clerk of Court is directed to close the file.

IT IS SO ORDERED.

Dated: November 12, 2009

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE